IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

REGINALD BOYER                                    :
              *Plaintiff*,
                                                                          CIVIL ACTION
          v.                                      :               NO. 17-5353

AKER PHILADELPHIA SHIPYARD, INC.
              *Defendant*.                         :

## MEMORANDUM

**Jones, II   J.**                                          **March 27, 2019**

## I.    INTRODUCTION

Plaintiff Reginald Boyer commenced this action against Defendant Aker Philadelphia

Shipyard, Inc., alleging employment discrimination on the bases of his race and religion.

Specifically, Plaintiff claims Defendant unlawfully terminated his employment in violation of

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*., and 42 U.S.C. § 1983.

Defendant filed a Motion for Summary Judgment and Plaintiff filed a Cross Motion for

Summary Judgment,[1] both of which are now ripe for this Court's review. For the reasons set

forth herein, Defendant's Motion shall be granted, and Plaintiff's Motion shall be denied.

---

[1] Defendant objects to Plaintiff's Cross Motion on the basis of timeliness.  Although said Motion
was filed untimely, this Court—in its discretion—shall afford Plaintiff leniency, per his status as
a *pro se* litigant.  Inasmuch as Plaintiff's Cross-Motion necessarily requires the same analysis of
the same evidence of record as that required of Defendant's, the discussion below pertains to
both.

1

## II.    FACTUAL BACKGROUND

### a.  Procedural History

Plaintiff commenced this litigation by filing a Complaint and a Motion to Proceed *In Forma Pauperis* on November 28, 2017. (ECF No. 1.) On December 12, 2017, Plaintiff filed a Request for Appointment of Counsel. (ECF No. 6.) Plaintiff's Request was granted, and Attorney Ari Karpf was appointed to represent Plaintiff.

On January 24, 2018, Plaintiff filed an Amended Complaint and Defendant filed an Answer thereto. (ECF Nos. 8-1, 14.) On February 20, 2018, the Honorable Timothy J. Savage referred the matter to mediation in accordance with the "Standing Order re: Attorney Panel for Pro Se Plaintiffs in Employment Cases." (ECF No. 17.)  However, on March 12, 2018, Plaintiff filed a Request to Dismiss Counsel, in which he suggested Mr. Karpf was conspiring against him by working with Defendant's counsel. (ECF No. 21.) Mr. Karpf filed a Motion to Withdraw on March 13, 2018, and a Show Cause Hearing was held before Judge Savage. Counsel's Motion was granted on March 27, 2018, after which time, Plaintiff proceeded *pro se*. (ECF Nos. 21–25.) A Case Management Order was issued by Judge Savage, setting a filing deadline of June 22, 2018 for ***all*** motions for summary judgment, with a Response deadline of July 6, 2018. (ECF No. 26.) On June 15, 2018, Defendant filed a Motion for Rule 26 Sanctions in response to a letter received from Plaintiff, in which he made various direct and indirect threats to Defendant's counsel. (ECF No. 35.) Plaintiff filed Objections to the Motion and the matter was reassigned to the undersigned on June 19, 2018.  (ECF Nos. 37–38.) By Order dated June 20, 2018, this Court referred Defendant's Motion for Sanctions to the United States Magistrate Judge Lynne A. Sitarski for disposition. (ECF No. 44.) On June 22, 2018—in accordance with the Case Management Order issued by Judge Savage—Defendant filed the instant Motion for Summary

Judgment. (ECF Nos. 41–43.) Plaintiff did not file a cross-motion, nor did he timely file a Response to Defendant's Motion. However, inasmuch as there remained outstanding issues pending before Judge Sitarski, this Court deferred the remaining (post Response) filing deadlines set forth in Judge Savage's Case Management Order and issued a Rule upon Plaintiff to Show Cause as to why he failed to file a Response. (ECF No. 55.) Plaintiff responded to the Show Cause Order and was given until August 31, 2018 to address Defendant's Summary Judgment Motion, with a specific directive to prepare said Response in accordance with this Court's Policies and Procedures. (ECF No. 58.)  Judge Sitarski denied Defendant's Motion for Sanctions and on August 30, 2018, Plaintiff filed his Response to the instant Motion, along with a Cross Motion for Summary Judgment. (ECF No. 61). Inasmuch as Plaintiff's Response was not in accordance with the Order issued by this Court on August 6, 2018 (ECF No. 58), it was stricken from the record and Plaintiff was given yet another opportunity to comply. (ECF No. 62.) Plaintiff did so on September 19, 2018, at which time, he again included a Cross Motion for Summary Judgment. (ECF No. 64.) Defendant responded in opposition to said Motion, arguing in part that the same is untimely. (ECF Nos. 65–66.)

### b. Factual Background

The undisputed facts[2] establish that on November 7, 2016, Plaintiff commenced his employment with Defendant as a Transportation I union employee. (SUF ¶ 1; RSUF ¶ 1.) An employee classified as such provides assistance with transportation vehicles and is expected to proficiently operate said vehicles, which are required to load and unload materials and equipment. (SUF ¶ 2; RSUF ¶ 2.) Thus, the employee is further expected to know the functions

---

[2] For purposes of this discussion, this Court shall refer to Defendant's Statement of Undisputed Facts as "SUF" and Plaintiff's Response thereto as "RSUF."

and capacities of all equipment; must recognize defective operating equipment; and must complete all required safety checklists and reviews of safe operating requirements. (SUF ¶ 2; ECF No. 43, Ex. B; RSUF ¶ 2.)

All employees hired in the same position as Plaintiff are placed on a training and probationary period, which consists of one thousand and forty (1,040) hours from the start of employment, consistent with the mandates of the Union's Collective Bargaining Agreement. (SUF ¶ 3; RSUF ¶ 3.) The probationary period may be extended an additional one hundred and seventy-five (175) hours upon written notice by Defendant to the Union and employee affected. (SUF ¶ 3; RSUF ¶ 3.) At all times material to Plaintiff's employment through his termination, Plaintiff remained within the probationary period. (SUF ¶3; RSUF ¶ 3.)

### c. Disputed Facts

The facts set forth above include three out of Defendant's seven Statements of Undisputed Material Facts, with which Plaintiff does not disagree. Beyond these three Statements, however, Plaintiff submits an additional "Statement of Disputed Material Facts," in which he denies those averments laid out in Defendant's Statements four through seven. (ECF No. 64 at 2–3.) The Court shall address the merits of each dispute in turn.[3]

---

[3] A party asserting that a fact is genuinely disputed must support the assertion by citing to particular parts of materials in the record, which may include affidavits. *See* Fed. R. Civ. P. 56(c)(1). However, "conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment." *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 161 (3d Cir. 2009) (citing *Blair v. Scott Specialty Gases*, 283 F.3d 595, 608 (3d Cir. 2009)) (internal quotation marks omitted). Instead, an affiant must set forth specific facts that reveal a genuine issue of material fact. *Id.* If a party fails to properly address another party's assertion of fact, a court may consider the fact undisputed and grant summary judgment. *See* Fed. R. Civ. P. 56(e)(2)–(3).

### i. Plaintiff's Damage to a Fork Truck

Defendant maintains that on January 17, 2017, Plaintiff was operating a T-4 Rotator fork truck and damaged the rotating feature. (SUF ¶ 4.) It is further alleged that Plaintiff did not report the damage of the fork truck, as he was required to do, which was instead noticed later that day by the day shift operator. (SUF ¶ 4.) In summarily denying these allegations, Plaintiff cites to various portions of the record that offer no support for his claims.[4] Indeed, the only portion of the record to which Plaintiff properly cites, is his own Affidavit, in which he appears to dispute that he caused damage to the Rotator and that he failed to report the same. Specifically, Plaintiff contends that there was nothing "noticeably wrong with the forklift" upon completing his shift on January 17, 2017. (ECF No. 64, ¶ 10.) This statement—the only portion of the record to which Plaintiff cites in support of his dispute—amounts to nothing more than a conclusory, self-serving assertion, which is only part of a larger affidavit that fails to set forth specific facts to reveal a genuine issue of material fact. *See Kirleis*, 560 F.3d at 161.

Moreover, of record is the written warning Defendant sent to Plaintiff describing the damage to the vehicle and his failure to report, which Plaintiff signed. (*See* ECF 43, Ex. D.) Accordingly, this Court finds this fact to be undisputed by the record. *See* Fed. R. Civ. P. 56(e)(2) (court may consider a fact undisputed when a party fails to properly support an assertion of fact or address another party's assertion of fact).

---

[4] Plaintiff cites to the Affidavit of Marty Mascuilli—Secretary-Treasurer of Local Union 1291 (ECF No. 64 at 38–39), and Defendant's Answers and Objections to Plaintiff's First Set of Interrogatories Addressed to Defendant (ECF No. 64 at 56–70). However, neither of these documents directly contradict those facts as alleged by Defendant. The Affidavit of Marty Mascuilli does not deny Plaintiff's alleged misconduct, but rather confirms that Mr. Mascuilli has no personal knowledge of the same. (*See* ECF No. 64 at 56–57.) For purposes of the instant Motion, this submission is wholly irrelevant. Likewise, the portions to which Plaintiff cites of Defendant's Answers and Objections to Plaintiff's First Set of Interrogatories do not contradict that which Defendant now sets forth in its Statement of Undisputed Facts.

### ii. Plaintiff Receives a Written Warning

Defendant further avers that on January 18, 2017, Plaintiff's supervisor, Gary Gaydosh,

documented the damage to the vehicle in a written letter to Plaintiff. (SUF ¶ 5; ECF No. 43, Ex.

D.) In this letter, Mr. Gaydosh informed Plaintiff that this incident should have led to progressive

discipline, which would have resulted in termination. (SUF ¶ 5; ECF No. 43, Ex. D.) However,

rather than terminate his employment, Defendant extended Plaintiff's probationary period by an

additional 175 hours. (SUF ¶ 5, ECF No. 43, Ex. D.) The letter further notified Plaintiff that any

other infraction or incident during the extended probationary period would result in termination.

(SUF ¶ 5; ECF No. 43, Ex. D.) On January 18, 2017, Plaintiff signed this letter, along with Mr.

Gaydosh and Union Steward Jeff Glenn. (SUF ¶ 5; ECF No. 43, Ex. D.)

Citing once more to Defendant's Answers and Objections to Plaintiff's First Set of

Interrogatories Addressed to Defendant, Plaintiff summarily disputes the above. (RSUF ¶ 5;

ECF No. 64, Ex. C.) Again, Plaintiff cites to nothing in the record that is factually inconsistent

with Defendant's Statement of Undisputed Facts, nor does he create a genuine issue of material

fact. Indeed, the two portions of Defendant's Answer to which Plaintiff cites do not speak to the

existence of his written warning or the extension of his probation. The warning letter of record

unambiguously details and reflects Defendant's Statement of Undisputed Facts regarding this

issue. Accordingly, the same shall be deemed undisputed in accordance with Fed. R. Civ. P.

56(e)(2).

### iii. Plaintiff's Violation of Another Employment Policy One Week Later

Defendant submits that Plaintiff violated another company policy just seven days after he

was issued a written warning that his employment would be terminated if another employment

infraction or incident occurred during his probationary period, therefore his employment was

terminated. (SUF ¶ 6; ECF No. 43, Exs. E–G.) This employment violation was issued after

Plaintiff refused to obey orders and abide by Philadelphia Shipyard rules and regulations. (SUF ¶

6.) Specifically, Plaintiff was observed by Mr. Gaydosh eating a plate of food in the employee

loft area after his work shift began that day, when he should have been on the job. (SUF ¶ 6; ECF

No. 43, Ex. E.) Plaintiff's shift began at 4:15 p.m. that day.  However, Plaintiff was found eating

pancakes in the rigging loft at or around 4:25 p.m. (SUF ¶ 6; ECF No. 43, Ex. E.) Additionally,

Plaintiff had not finished his pre-op checklist on his forklift as he was required to do before he

began his daily work tasks. (SUF ¶ 6; ECF No. 43, Ex. E.)

In disputing this Statement, Plaintiff cites once more to the very same portions of

Defendant's Answer to which he had previously cited in his immediately preceding dispute.

(RSUF ¶ 6 (citing ECF No. 64, Ex. C).) Again, there is nothing in Defendant's Answer which

would raise a genuine issue of material fact. Further, Plaintiff's own Affidavit does not raise a

genuine issue of material fact, as it does not conflict with or overtly dispute Defendant's

Statement, but instead presents a collateral account, which is not inconsistent with Defendant's

Statement. Indeed, Plaintiff outright ignores the assertion that he had been eating pancakes

instead of working, or that he failed to complete his pre-op checklist on his forklift as he was

required to do—all while under employment probation. Plaintiff also does not deny that such

behavior violated Philadelphia Shipyard rules and regulations. Accordingly, Defendant's

Statement shall be deemed undisputed in accordance with Fed. R. Civ. P. 56(e)(2).

### iv.  Plaintiff's Termination

Following Plaintiff's second disciplinary infraction within seven days, Plaintiff's

employment with Philadelphia Shipyard was terminated via written correspondence for failing

probation, effective January 27, 2017. (SUF ¶ 7; ECF No. 43, Ex. I.)

In denying the above, Plaintiff cites generally to his own Affidavit, and to Defendant's Answers and Objections to Plaintiff's First Set of Interrogatories. (RSUF ¶ 7.) It is unclear as to why Plaintiff disputes the above, as his very termination is what occasions the instant suit. While Plaintiff's citation to Defendant's Answers again proves inconclusive, a closer examination of Plaintiff's Affidavit suggests that Plaintiff attempts to dispute several irrelevant details relating to his termination, which are wholly immaterial to the instant case. To the extent Plaintiff highlights what he believes to be inconsistencies, the Court shall address each.

First, Plaintiff appears to suggest the existence of an inconsistency in Defendant's proffered reason for his termination. Specifically, while acknowledging that the termination letter outlined his failing probation as the reason for his termination, Plaintiff highlights that his prior warning letter provided a different explanation: refusing to obey orders or abide by Defendant's rules and regulations. (ECF No. 64, Ex. A-1; ECF No. 43, Ex. I.) However, Plaintiff does not demonstrate an inconsistency, but rather two explanations belonging to two separate and distinct employment actions against him.

Second, Plaintiff submits that the effective date of termination, as indicated in the termination letter, was January 25, 2017—two days prior to his alleged receipt of the letter. (ECF No. 64, Ex. A-1.) However, the termination letter is of record, and unequivocally indicates that his effective date of termination was indeed January 27, 2018. (*See* ECF No. 43, Ex. I.) The termination letter therefore reflects that which Defendant put forth in in its Statement of Undisputed Material Fact. Accordingly, Defendant's Statement on this issue shall be deemed undisputed in accordance with Fed. R. Civ. P. 56(e)(2).

## III.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), a court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine [dispute] as to any material fact and that the moving party is entitled to a summary judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a).  "If the moving party meets its burden, the burden shifts to the nonmoving party to go beyond the pleadings and come forward with specific facts showing that there is a genuine issue for trial." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (internal citations and quotation marks omitted).  Therefore, in order to defeat a motion for summary judgment, the non-movant must establish that the disputes are both (1) material, meaning concerning facts that will affect the outcome of the issue under substantive law; and (2) genuine, meaning the evidence must be such that a reasonable jury could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, 'the burden on the moving party may be discharged by "showing"—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof." *Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 193 (3d Cir. 2001) (quoting *Celotex*, 477 U.S. at 325).  "[A] nonmoving party must adduce more than a mere scintilla of evidence in its favor and cannot simply reassert factually unsupported allegations contained in its pleadings[.]" *Williams v. West Chester*, 891 F.2d 458, 460 (3d Cir. 1989) (citation omitted).  Accordingly, summary judgment is mandated "against a party who fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## IV.  DISCUSSION

### A.  Discrimination on the Basis of Race/National Origin

In Count I of Plaintiff's Amended Complaint, he alleges he was subjected to unlawful discrimination based on his race (African American), in violation of Title VII. (Am. Compl. ¶¶ 24–26.) He further alleges he was subject to unlawful discrimination based on his race in violation of 42 U.S.C. § 1981. (Am. Compl. ¶¶ 27–29.)

Title VII makes it unlawful for an employer to discriminate against any individual with respect to compensation or terms, conditions, or privileges of employment on the basis of race or religion. 42 U.S.C. § 2000e–2(a). Section 1981 requires both private and state entities to grant "[a]ll persons" the same rights as are "enjoyed by white citizens." 42 U.S.C. § 1981(a), (c). Race and religious discrimination claims brought under Title VII and race-based claims brought under § 1981 are all analyzed under the same burden-shifting scheme. *See Greer v. Mondelez Global, Inc.,* 590 F. App'x 170, 172 n.4 (3d Cir. 2014) ("Because the substantive elements of an employment discrimination claim brought under § 1981 are identical to those brought under Title VII, § 1981 claims are also governed by the *McDonnell Douglas* burden-shifting framework.") (citing *Anderson v. Wachovia Mortg. Corp.,* 621 F.3d 261, 267 (3d Cir. 2010)); *Wilcher v. Postmaster Gen.*, 441 F. App'x 879, 879-82 (3d Cir. 2011) (analyzing Title VII race and gender discrimination claims together); *Pamintuan v. Nanticoke Memorial Hospital*, 192 F.3d 378, 385 (3d Cir. 1999) ("We analyze section 1981 claims under the familiar *McDonnell Douglas* shifting burden framework used in Title VII discrimination cases."). Because Plaintiff's race discrimination claims are based on the same conduct and analyzed under the same framework,

this Court shall consider them together.

In *McDonnell Douglas Corp. v. Green*, the Supreme Court articulated "the standards governing the disposition of an action challenging employment discrimination."[5] 411 U.S. 792, 798 (1973). The Court refined these standards in *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). This Court incorporates those refined standards in the framework set forth below.

### a.    Step One—*Prima Facie* Case

"First, the plaintiff has the burden of proving by a preponderance of the evidence a *prima facie* case of discrimination." *Id.* To accomplish this,

> [d]iscrimination can be shown under either of two theories, disparate impact theory or disparate treatment theory. "A disparate impact violation is made out when an employer is shown to have used a specific employment practice, neutral on its face but causing a substantial adverse impact on a protected group and which cannot be justified as serving a legitimate business goal of the employer." *Equal Employment Opportunity Comm'n v. Metal Serv. Co.,* 892 F.2d 341, 346 (3d Cir.1990). Under a disparate impact analysis, a plaintiff need not show intentional discrimination in order to prevail. *Id.* at 346–47. In contrast to a disparate impact violation, a disparate treatment violation "is made out when an individual of a protected group is shown to have been singled out and treated less favorably than others similarly-situated on the basis of an impermissible criterion." *Id.* at 347. To proceed under a disparate treatment theory, plaintiff must prove that the employer had a discriminatory motive. *Id.*

*Crumpton v. Potter*, 305 F. Supp. 2d 465, 471–72 (E.D. Pa. 2004). In this case, Plaintiff's Amended Complaint alleges "disparate treatment." (Am. Compl. ¶ 14.) Under a disparate treatment analysis, a plaintiff may establish a *prima facie* case of discrimination by presenting

---

[5] The issue before the *McDonnell Douglas* Court "concern[ed] the order and allocation of proof in a private, non-class action challenging employment discrimination." *McDonnell Douglas Corp. v. Green* 411 U.S. 792, 798 (1973).

direct evidence of intentional discrimination by the defendant. *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 121 (1985). In the absence of direct evidence, a plaintiff can establish a *prima facie* case by showing the existence of circumstantial evidence which creates an inference of discrimination. *McDonnell Douglas,* 411 U.S. at 802.

Here, the record presents no direct evidence. Therefore, Plaintiff must establish his *prima facie* case of discrimination by showing: "(1) [he] is a member of a protected class; (2) [he] was qualified for the position in question; (3) [he] suffered an adverse employment action; and (4) that adverse employment action gives rise to an inference of unlawful discrimination." *Tourtellotte v. Eli Lilly & Co*., 636 F. App'x 831, 842 (3d Cir. 2016) (citing *Jones v. Sch. Dist. of Philadelphia*, 198 F.3d 403, 410–11 (3d Cir. 1999)). *See also Crumpton*, 305 F. Supp. 2d at 472 (same); *Harris v. SmithKline Beecham,* 27 F.Supp.2d 569, 578 (E.D.Pa.1998) (same). For purposes of satisfying the fourth element, a plaintiff must demonstrate that similarly situated persons outside the protected class were treated more favorably. *Crumpton*, 305 F. Supp. 2d at 472. *See also International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335 n. 15 (1977) ("Proof of discriminatory motive . . . can in some situations be inferred from the mere fact of differences in treatment."). While "similarly situated" does not necessarily mean identically situated, the plaintiff must nevertheless be similar in "all relevant respects." *Opsatnik v. Norfolk S. Corp.*, 335 F. App'x 220, 222–23 (3d Cir. 2009) (citing *Holifield v. Reno,* 115 F.3d 1555, 1562 (11th Cir.1997)). This often requires a showing that the relevant aspects of the plaintiff's employment situation are "'nearly identical' to those of the co-workers that plaintiff alleges were treated more favorably." *Hobson v. St. Luke's Hosp. & Health Network*, 735 F. Supp. 2d 206, 214 (E.D. Pa. 2010) (citing *Solomon v. Philadelphia Newspapers, Inc.,* 2008 U.S. Dist. LEXIS 41978, at *42-43 (E.D. Pa. May 21, 2008) (Giles, J.)). Demonstrating that employees are

similarly situated often includes a "showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Opsatnik*, 335 F. App'x at 223. To that end, a plaintiff must show that the other employee's acts were of "'comparable seriousness'" to his own infraction. *Anderson v. Haverford College*, 868 F. Supp. 741, 745 (E.D. Pa. 1994) (quoting *Lanear v. Safeway Grocery*, 843 F.2d 298, 301 (8th Cir. 1988)); *see also McDonnell Douglas*, 411 U.S. at 804 (considering whether comparators were "involved in acts . . . of comparable seriousness to" the plaintiff's acts). Whether a particular fact or circumstance is relevant for purposes of a "similarly situated" analysis must be determined by the context of each case. *Hobson*, 735 F. Supp. 2d at 214 (citing *Houston v. Easton Area School District,* 355 F. App'x 651, 654 (3d Cir. 2009)).

### b.     Step Two—Rebuttal

Second, if a plaintiff succeeds in proving a *prima facie* case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's [treatment]." *Burdine*, 450 U.S. at 253. To sustain this burden, "[t]he defendant need not persuade the court that it was actually motivated by the proffered reasons." *Id.* at 254. The inquiry concerning whether the defendant has met its burden of production "can involve no credibility assessment," since "the burden-of-production determination necessarily *precedes* the credibility-assessment stage." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 509 (1993) (emphasis in original). "The defendant satisfies its burden of production, and rebuts the plaintiff's *prima facie* showing of discrimination, simply by introducing admissible evidence that, if taken as true, would permit a finding that the challenged employment action was taken for legitimate, nondiscriminatory reasons." *Blackwell-Murray v. PNC Bank*, 963 F. Supp. 2d 448,

461 (E.D. Pa. 2013).

### c. Step Three—Pretext

Third, if the defendant rebuts the plaintiff's *prima facie* case, "the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Burdine* 450 U.S. at 252–53 (citing *McDonnell Douglas* 411 U.S. at 804). Therefore, in order to survive summary judgment, a plaintiff must submit evidence "from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie,* 32 F.3d 759, 764 (3d Cir. 1994). In showing pretext, it is not enough to reassert the facts of the *prima facie* case. *Burdine*, 450 U.S. at 255 ("[T]he [pretext] factual inquiry proceeds to a new level of specificity."); *see also Martin v. Gen. Elec. Co.*, 891 F. Supp. 1052, 1056 (E.D. Pa. 1995) ("[A] plaintiff can defeat a motion for summary judgment either by discrediting defendant's reason or by coming forward with additional evidence of discrimination[.]"). Therefore, a plaintiff's *prima facie* case, combined with "evidence suggesting that an employer's proffered reasons for an adverse employment action are false . . . may sufficiently undermine the employer's credibility to enable a reasonable trier of fact to conclude that illegal discrimination has occurred." *Mitchell v. Miller,* 884 F.Supp.2d 334, 371 (W.D. Pa. 2013) (citing *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 147–48 (2000)).

The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. *Burdine*, 450 U.S. at 253.

Utilizing these standards, this Court finds Plaintiff has failed to meet his burden. First, Plaintiff fails to establish a *prima facie* case of discrimination. It is undisputed that: Plaintiff is a member of a protected class by virtue of his race; he was qualified for the position in light of his resume; and, he suffered an adverse employment action by way of his termination. (ECF No. 42, at 6.) Thus, Plaintiff meets the first three elements of demonstrating *prima facie* discrimination. However, Plaintiff fails to demonstrate the fourth element—that his termination gives rise to an inference of unlawful discrimination. Indeed, there is no evidence in the record—direct or circumstantial—which would adequately give rise to such an inference.

In his Amended Complaint, Plaintiff avers that he was subjected to treatment which was not experienced by co-workers who were not African American, including, *inter alia*, being treated in a rude and condescending manner; having his probationary period extended; and being "nitpicked on a constant basis." (First Am. Cl., at 3.) However, to support these allegations, Plaintiff provides no evidence of record, absent his own self-serving Affidavit, which merely repeats the same claims set forth in his Amended Complaint. (ECF No. 64, Ex. A-1.)

Additionally, Plaintiff has failed to identify any similarly situated person outside of his own protected class who received more favorable treatment. *See Crumpton*, 305 F. Supp. 2d at 472; *International Brotherhood of Teamsters*, 431 U.S. at 335. In his brief, Plaintiff argues that disparate treatment lies in Mr. Gaydosh's decision to hold Plaintiff solely responsible for the damage to the T-4 Rotator, while simultaneously disregarding the alleged role of Plaintiff's Caucasian coworker, Shawn McDonnell. (ECF No. 64 at 8.)  Plaintiff provides this Court with no evidence of record to demonstrate same. By Plaintiff's account, he and Mr. McDonnell were the newest employees in the Transportation Department; Mr. McDonnell had similar job responsibilities; and, Mr. McDonnell also operated the same vehicle in question. (ECF No. 64 at

10, 13–14) This Court does not address whether Mr. McDonnell is "similarly situated" for purposes of this analysis, for there exists a greater issue confronting Plaintiff's burden. The discrimination which Plaintiff believes pervades his termination immediately dissolves when confronting the fact that it was Plaintiff who was operating the vehicle at the time it was damaged—not Mr. McDonnell. Plaintiff has not demonstrated by any evidence of record that Mr. McDonnell committed any act which was of "comparable seriousness" to his own infraction, and subsequently received more favorable treatment. *See Anderson*, 868 F. Supp. at 745; *McDonnell Douglas* at 804.

On these grounds alone, summary judgment is warranted, as Plaintiff fails at the very onset of the analysis to establish *prima facia* discrimination on the basis of race, which is not only an element essential to his case, but one on which he would bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322.

However, assuming *arguendo* Plaintiff could establish a *prima facie* case for discrimination, the undisputed facts demonstrate that Plaintiff would not be able to sustain his burden of proof at all under the *McDonnell Douglas* burden-shifting analysis.

First, Defendant is able to articulate a legitimate, nondiscriminatory reason for terminating Plaintiff. *See Burdine*, 450 U.S. at 253. Specifically, Defendant presents evidence of well-documented, progressive discipline during his probationary period, which included two infractions that occurred within a week of Plaintiff's termination. (*See* ECF No. 43, Exs. D–G, I.) Thus, Defendant satisfies its burden, as this evidence adequately permits a finding that Plaintiff's termination was made for legitimate, nondiscriminatory reasons. *See Blackwell-Murray*, 963 F. Supp. 2d at 461.

Second, after the burden shifts once more to Plaintiff, he must then prove by a preponderance of the evidence that the reasons Defendant offers for Plaintiff's termination were pretextual. *See Burdine* at 252–53. Again, Plaintiff fails to meet this burden, as there exists no reason of record to contradict Defendant's explanation for Plaintiff's termination. *See Fuentes*, 32 F.3d at 764. When Plaintiff committed his first infraction by damaging the T-4 Rotator vehicle and failing to report the same, Defendant did not immediately terminate Plaintiff—as custom typically demanded—but instead issued a written warning and extended Plaintiff's probationary period. (*See* SUF ¶ 5; ECF No. 43, Ex. D.) As such, the record demonstrates that Defendant did not harbor discriminatory animus in terminating Plaintiff, as had—just days prior to his termination—effectively afforded him a second chance.

Consistent with this Court's finding that an invidious, discriminatory reason was likely not a motivating or determinative cause underlying Defendant's decision to terminate Plaintiff, this Court further finds that within days of his probationary period being extended, Plaintiff violated Shipyard rules and, by extension, the terms of his probation. Specifically, Mr. Gaydosh found Plaintiff not working at his post, but rather at the rigging loft eating pancakes. (SUF ¶ 6; ECF No. 43, Exs. E–G.) Not only was Plaintiff found overtly neglecting his work duties, but he had also failed to complete his pre-op checklist on his forklift, which he was required to do before he began his daily work tasks. (*See* SUF ¶ 6; ECF No. 43, Exs. E–G.) The probability that a reasonable factfinder would believe there existed discriminatory intent is further diluted when recalling that it was Plaintiff who made the decision to neglect his work duties, even in spite of an explicit, prior warning that any other infraction or incident during his extended probationary period would result in termination. (SUF ¶ 7; ECF No. 32, Ex. D.) Plaintiff offers little more than generalized allegations of cold behavior by Defendant to suggest that Defendant's proffered

reasons for his termination are false, less acknowledge the fact that he was, while on the clock, eating pancakes instead of working. *See Mitchell*, 884 F. Supp. 2d at 371. Beyond mere conclusory accusations relating to discriminatory intent, Plaintiff cannot put forth adequate evidence that would enable any reasonable trier of fact to conclude that illegal discrimination occurred. *See id.*

As Plaintiff fails to establish those elements which are essential to his race discrimination case, and on which he would bear the burden of proof at trial, summary judgment is mandated in favor of Defendant. *See Celotex*, 477 U.S. at 322.

### B.      Discrimination on the Basis of Religion

In Count III of his Amended Complaint, Plaintiff asserts a claim for discrimination on the basis of religion, in violation of Title VII, 42 U.S.C. § 2000e-2(a). In particular, Plaintiff claims Defendant discriminated against him because he practices the religion of Islam. (Am. Compl. ¶¶ 13, 30–32.)[6]  A Title VII claim for discrimination on the basis of religious belief is assessed in the same manner as that set forth above regarding race discrimination. Applying said standard to the undisputed facts of record, this Court finds Plaintiff has again failed to meet his burden.

First, Plaintiff cannot establish a *prima* facie case for discrimination based on religion. Again, the facts surrounding Plaintiff's protected class, his qualifications, and his termination are undisputed. (ECF No. 42 at 12.) While the first three elements of *prima facie* discrimination can be established, Plaintiff fails to demonstrate that his termination gives rise to an inference of unlawful discrimination. Specifically, Plaintiff fails to identify any similarly situated, non-

---

[6] Plaintiff alleges in his Amended Complaint that his "religious beliefs are noticeable by his appearance," and goes on to note that he "wears red henna in his beard and wears his pants above his ankles (both traits which are indicative of an individual who practices the Islam religion)." (Am. Compl. ¶ 13 n.2.)

Muslim coworker who was treated more favorably. *See Crumpton*, 305 F. Supp. 2d at 472. The only comparable employee Plaintiff can reference is Mr. McDonnell, the religious belief (or non-belief) of whom is unknown. However, even if Plaintiff could demonstrate that Mr. McDonnell is outside of his protected class (*i.e.*, not a practitioner of Islam), his *prima facie* showing of religious discrimination is insufficient for the same reason his claim for race discrimination fails: Plaintiff cannot demonstrate that Mr. McDonnell committed any act which was of "comparable seriousness" to his own infraction. *See McDonnell Douglas,* 411 U.S. at 804; *Anderson*, 868 F. Supp. at 745.

Assuming *arguendo* Plaintiff could establish a *prima facie* case for religious discrimination, he otherwise fails to meet his burden under the *McDonnell Douglas* framework. As discussed above, Defendant can successfully state a legitimate, nondiscriminatory reason for Plaintiff's termination. *See Burdine*, 450 U.S. at 253. However, faced once more with the task of proving pretextual discrimination, Plaintiff fails to sustain his burden. Again, absent mere allegations of unpleasant behavior, Plaintiff does not offer evidence—direct or circumstantial—that would tend to prove discriminatory animus underlying Defendant's decision to terminate Plaintiff. Indeed, the overwhelming bulk of Plaintiff's "evidence" offered to prove discriminatory intent represents a slew of various news articles describing mistreatment of Muslims at large. (ECF No. 64, at 9; Ex. B.) Specifically, Plaintiff blames President Donald J. Trump for creating a general "atmosphere of intolerance"—a societal condition which, according to Plaintiff, has only been exacerbated by international terrorists being incorrectly associated with the religion of Islam. (ECF No. 64, at 9.)

This Court declines to consider these articles and the propositions for which Plaintiff claims they stand, for they are wholly irrelevant to the issue presently before the Court: whether

Plaintiff can demonstrate by a preponderance of the evidence that Defendant harbored discriminatory animus. *See Fuentes*, 32 F.3d at 764. Though the court can appreciate the fervor with which Plaintiff advocates for his religious community, he loses sight of the task at hand, and likewise fails to offer evidence of record which speaks specifically to his own alleged discrimination. Accordingly, this Court finds that Plaintiff cannot sustain his burden to prove religious discrimination, thereby necessitating summary judgment in favor of Defendant. *See Celotex*, 477 U.S. at 322.

## V. CONCLUSION

For the reasons set forth hereinabove, Defendant's Motion for Summary Judgment shall be granted, and Plaintiff's Cross Motion for Summary Judgment shall be denied.

An appropriate Order follows.

BY THE COURT:

/s/  C. Darnell Jones, II    J.